UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION

        Plaintiff,

                                Civil Action No.
                                1:05-cv-01919-RCL

V.

LeeRoy Allen, Jr.,

        Defendant.

**REPORT PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 26 (f)
AND LOCAL CIVIL RULE 16.3(d) AND
PROPOSED SCHEDULING ORDER**

I certify that on Monday, March 13, 2006, I caused a copy of the attached document Pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3(d) and Proposed Scheduling Order to be served by first-class mail, postage prepaid, upon Assistant Chief Litigation counsel, U.S. Securities and Exchange Commission.

**LeeRoy Allen, Jr.
P.O. Box 70
Bayard, NM 88023**

RECEIVED

MAR 2 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

March 12, 2006


Mr. Michael K. Lowman, Esq.
Assistant Chief Litigation Counsel
U.S. Securities & Exchange Commission
100 F. Street NW
Mail stop 4030
Washington, DC 20549

RE: Civil Action No. 1:05-cv-01919-RCL

Dear Mr. Lowman,

I have been sick and have not had the opportunity to respond to your correspondence any sooner. You are doing a very good job of positioning the SEC properly with the courts. I now recognize that I may be following a process that may not work to my best interest. I originally started to believe that you were listening to my pleas for fairness in what you were telling me and asking for my cooperation. I have suddenly come to realize that it may not be my cooperation that you or Ms. Romero may be seeking here and it could very well be that you have not heard a word concerning my innocence in the past.

Since the very first day that I met with Ms. Romero, in Washington DC and she took my original deposition for the record for the SEC, I explained to her and those present that I was not represented by an attorney because I felt that I had done nothing wrong and was not afraid to discuss or answer any questions about any and all matters relating to my position/activities with International Biofuel and Biochemical Company (IBBC). All I asked for was fairness from her then and I asked it of you now. It is obvious that you are not listening and are now motivated by something that I can not control and you have not heard a word that I have said.

I repeat: To this very day I feel that I did my level best to make IBBC work, I committed no violation intentionally and I now therefore ask that you proceed to find a way to **dismiss all allegations/charges that may be implied against me**. This may sound like a ridiculous demand, but my demand is not even close to the ridiculous sounding statements that you make about me.

Like the Officers, who were previously in-charge of the original companies (J Bird Records) and the company that solicited my help to bring the two companies together (American Biofuels). I did not understand their motives then nor did I have a full grasp of the entire situation before I accepted the position as President and CEO and proceeded to rename the company from J Bird Records to International Biofuel and Biochemical Corporation (IBBC).

I now find myself walking into the same situation, I do not know what your motives may be nor do I have a full grasp of the entire situation. **Therefore I ask once more---Dismiss the case and dismiss all allegations/charges that you and Ms. Romero have implied that I have committed.**

I do not understand your motives nor do I feel that you're looking for my best interest in resolving this matter.

You need to understand the following:

Before I accepted the position as President and CEO of International Biofuel and Biochemical Corporation (IBBC), I carefully explained to the officers of both companies; J Bird Records and American Biofuels that I had no background or experience in managing a public company.

They told me that they would help me to manage the company and would not leave the company. The attorneys and the accountant representing the affairs of J Bird Records told me that they understood my situation and that they would also help me to gain the needed experience if I assumed the position. I did not understand what they meant when they said assume the position.

The officers of American Biofuels told me that they would not cooperate with making a biodiesel processor available short of J Bird Records making me President of the Company. The Officers of J Bird Records told me that they had no problem with meeting what the officers of American Biofuels wanted. I need you to understand that American Biofuels worked out of California and J Bird Records operated out of Connecticut. All parties involved told me that they did not trust the officers representing the different companies. Also you need to understand that up to this date (or since) I had never met the officers of J Bird Records. To this very day I have never met any parties representing themselves as officers of J Bird Records in person. I had met the officers of American Biofuels because I was helping them to open a market for their products in Arizona. I was just trying to make a living; I had no ambitions to become a President or a CEO of a public company. When both companies asked me to act as the disinterested party and help them come together, I assumed that it would be alright.

Before I took the position as President and CEO of IBBC, I took the time to explain what American Biofuels wanted from J Bird Records prior to forming a partnership. American Biofuels wanted $10,000,000 before they would license the biodiesel processing technology to IBBC. They also demanded Stock ownership in IBBC and some monies up front. The officers of J Bird Records told me that they would have not problem coming up with the $10,000,000 as they had already located an investor who would be willing to provide the initial investment dollars. They also told me that they had the initial monies that American Biofuels demanded to initiate the partnership. Based on the fact that I assumed that all was in place and we would be able to build a very strong and viable company; I accepted the titles to act as President and CEO of the new company IBBC. I was so confident that the company could work that I even shared

the name and the logo with J Bird Records. I also made all the various contacts that I had made in the past, available to the new company (IBBC).

I was informed that J Bird Records had a general counsel (Joseph Kriz) who would assist me and an SEC Attorney (Melvin Hicks) who would give me direction when dealing with SEC matter. To help with the accounting, I would be working with the company CPA (Frank Caracansi). Within a month (January, 2003) after accepting the titles, I was informed by the CPA that the 2002-Annual Report and the first Quarter Report was due with the SEC. Assuming that all was fine I asked him to contact the attorneys and proceed to develop the initial reports. He proceeded to tell me "I will not lift a pencil until you pay me, $36,000 that is due me and is now over due. That same day I was asked by the President of American Biofuels "When can I expect the initial $45,000 dollars that your company has agreed to pay me in 15 days." I immediately called the officers of now IBBC and asked them about the CPA debt and advised them of what American Biofuels demanded. They advised me of the following: "All of our attempts to raise additional monies have fallen on deaf ears; it is now your problem to fix. We have nothing to help you with."

In order for the company to proceed, I was left with no choice but to attempt to raise the money myself. I raised the initial money to pay American Biofuels and the CPA. Together, the CPA, the Company Attorney and the SEC Attorney drafted the 2002 Annual Report now in question and the First Quarter Report. I had no knowledge of the history or activities of J Bird Records so I was not asked nor was I able to provide any information concerning the 2002 Annual Report. When the report was completed in late May-June, 2003 I was told that they were ready to submit the report. I specifically asked each party if he was authorized by the SEC to draft and file the report. I was personally told by each that they were authorized by the SEC to submit the report for filing and acceptance by the SEC. Sarbanes-Oxley (Phonetic Spelling) was just coming into effect and I asked each of them if the report met all of the requirements. To the man, he told me that the report was correct and that they held the necessary authority to make the filing/submission. It required my signature, however. To this very day I am not sure that what I signed is what was filed. I was in Phoenix, AZ and they were in Connecticut. They advised me that they would handle the situation/matter with the SEC.

I continued to do what I was hired to do, that was to build the company and make the much need feedstock lands available to the company. I should have stopped at that point and submitted my resignation. However, by then I had many other companies involved and a number of Tribal Nations that were willing to help. I could not have stopped at that point in time.

The rest of the story goes about the same way. Just different people involved. I can honestly tell you that I did my very best to make IBBC successful. I could never get past the private motivations held by different individuals who were involved with IBBC.

Again, I find myself in the same situation with you. I explain my innocence and you tell me that you understand, yet you proceed to position me in an even deeper hole with the

courts. I need this entire situation to come to a complete stop. I did nothing wrong and if I did it was purely by accident.

**Once more, if you're listening; I ask that you find a way to drop/dismiss all allegations against me.** You may think that I may have violated a technicality, but if you proceed you will find that I never did nor have ever intentionally committed a violation of whatever. Thank you for your time, Please provide me with an answer as soon as possible?

Sincerely,

LeeRoy Allen, Jr.